UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

BRUCE E. BOZZI, SR.,                    Case No. 9:19-bk-09677-FMD
                                        Chapter 7
    Debtor.
_____/

## EXHIBIT REGISTER

Exhibits submitted on behalf of:

[ X ] Trustee    [ ] Plaintiff    [ ] Defendant    [ ] Proponents    [ ] Other

Date of Hearing / Trial:            January 23, 2020 at 9:30 a.m.

Type of Hearing / Trial:            Hearing on Amended Motion to Sell Property of the Estate
                                    Free and Clear of Purported Liens and Interests (Doc. 84)

Submitted by:

                        By: /s/ Robert E. Tardif, Jr.
                            Robert E. Tardif, Jr., Esq.
                            Florida Bar No. 818704
                            P.O. Box 2140
                            Fort Myers, Florida 33902
                            Tel: 239/362-2755
                            Fax: 239/362-2756
                            Email: rtardif@comcast.net

                            *Chapter 7 Trustee*

| Exhibit Number | Description | Admitted | Refused | Not Introduced |
|---|---|---|---|---|
| 1 | Residential Contract of Sale | ✓ | | |
| 2 | BROKER PRICE OPINION | ✓ | | |
| 3 | TOWN OF EAST HAMPTON NY ASSESSMENT ROLE AND LEVY MODULE | ✓ | | |
| 4 | | | | |
| 5 | | | | |

9532235-1



# BROKER PRICE OPINION

## 37 Cottage Ave, East Hampton, NY 11937

19 Cottage Ave

19 Cottage

11 Cottage Ave

57 Lee Ave

72 Lily Pond Ln

### The Atlantic Group

Hara Kang, Justin Agnello, and James Keogh

At Douglas Elliman Real Estate



20 MAIN ST
East Hampton, NY 11937
(631) 329-9400
www.elliman.com

elliman.com



# NEIGHBORHOOD DATA

| | | | |
|---|---|---|---|
| Property Values: | declining | Homes in Direct Competition: | 8 |
| Supply/ Demand: | Increasing | Sales in the past 15 months: | 6 |
| Marketing Time: | 6– 8 months | | |

### Price Range

High: $50,000,000

Low: $3,500,000

# PROPERTY DATA

Property Address: 37 Cottage Ave, East Hampton, NY 11937

| House | Rooms | Property |
|---|---|---|
| Traditional | 5 Bedrooms | 0.98 acre |
| 2 story | 4.5 Baths | |
| Built 1920's | Extra Rooms | |
| 4,000 Sq. Ft. | Full Basement | |
| GHA | | |
| Town Water and Gas | | |



# PROPERTY VALUATION AND PRICING STRATEGY

### 37 Cottage Ave, East Hampton, NY 11937

| | |
|---|---|
| Recommended list price for a Sale, 3-6 months: | $5,000,000 - $5,300,000 |
| Final value of the property for a Sale, 3-6 months: | $4,800,000 - $5,150,000 |
| Recommended list price for a Sale, 6-12 months: | $5,350,000-$5,750,000 |
| Final value of the property for a Sale, 6-12 months: | $5,250,000-$5,650,000 |

# HAMPTONS MARKET REPORT

| Hamptons Market Matrix | Q3-2019 | %Δ (QTR) | Q2-2019 | %Δ (YR) | Q3-2018 |
|---|---|---|---|---|---|
| Average Sales Price | $1,375,772 | -20.3% | $1,726,087 | 0.6% | $1,367,718 |
| Median Sales Price | $857,000 | 0.8% | $850,000 | 5.5% | $812,500 |
| Number of Sales (Closed) | 402 | -19.3% | 498 | -15.2% | 474 |
| Days on Market (From Last List Date) | 138 | -0.7% | 139 | 13.1% | 122 |
| Listing Discount (From Last List Price) | 12.3% | | 10.4% | | 10.5% |
| Listing Inventory | 2,571 | 0.5% | 2,557 | 76.9% | 1,453 |
| Months of Supply | 19.2 | 24.7% | 15.4 | 108.7% | 9.2 |
| Year-to-Date | Q3-2019 | %Δ (QTR) | Q2-2019 | %Δ (YR) | Q3-2018 |
| Average Sales Price (YTD) | $1,600,515 | N/A | N/A | -1.4% | $1,622,525 |
| Median Sales Price (YTD) | $850,000 | N/A | N/A | 0.0% | $850,000 |
| Number of Sales (YTD) | 1,197 | N/A | N/A | -11.0% | 1,345 |



# ON THE MARKET



IN# 21354  Folio# 59533

## 73 Ocean Ave, East Hampton

$6,900,000

For Sale

5 BD  3.5 BA  4K FT²  0.6 ACR

DETAILS

Single-Family  2 stories  Built in 1914  Water view: none / maintard  Style: traditional  Water source: town

AMENITIES

Pool, Gunite, In Ground, 18 x 36ft  Heat: GHW  3 Fireplaces  Basement  Central AC  South of Highway  Hardwood Floors  TV/Cable/Satellite  Pool/Guest House  Outdoor Shower(s)  Bathroom on First Floor  Office  Breakfast Area  Laundry Room

DESCRIPTION

### Renovated Traditional A Block From Main Beach

Located in the estate section of East Hampton Village, this 1914 property is seconds away from Main Beach and directly across from Lily Pond Lane. Completely renovated in 2011 by builder Ronald Webb and designed by Suzanna Simon Pietri, the interior epitomizes modern luxury while the exterior captures early 1900 East Hampton aesthetics. Approach the charming front porch through the entry into a large open living room with a custom bar and powder room. The great room overlooks the back deck and gunite pool. The chefs kitchen includes all modern amenities such as a La Cornue double range stove and sub zero refrigerator. Also on the main floor is a formal dining room, office and laundry room with stairs leading up to 5 bedrooms and 3 baths. The pool area is surrounded by large cabanas, chaise lounge chairs, a natural gas fire pit and a pool house/garage for storage. Additionally, the covered outdoor kitchen includes a Marra Forni pizza oven, Wolf grill and a second refrigerator. A truly exquisite Hamptons home in an A+ location.



# ON THE MARKET



IN# 345795

## 57 Lee Ave, East Hampton

### $5,995,000

For Sale

5 BD    4 BA    3K FT²    0.66 ACR

### DETAILS

Single-Family    2 stories    Built in. 1910    Water view. none / mainland    Style. traditional    Water source town

### TAXES & FEES

$13895 (yearly taxes)                    $5915 (village taxes)

### AMENITIES

Pool. Heated Pool    Heat. GHA    Fireplace    South of Highway    Central AC    Furnished    TV/Cable/Satellite    Master Bedroom on First Floor    Family Room/Den    Bathroom on First Floor    Bonus Room    Great Room    Media Room    Breakfast Area    Laundry Room

### DESCRIPTION

### Prestigious Lee Avenue East Hampton Gem

This utterly charming south of the highway property is located near the beautiful East Hampton ocean beaches and the center of town. Featuring 5 bedrooms and 4 bathrooms, this spacious home has generous living spaces and room for family and guests to enjoy. Although modernized to perfection, it maintains its classic feel with a bright and airy mood. The gracious living room leads into a dining area and kitchen all designed for fabulous entertaining and relaxing. In addition, there is an amazing sunroom, which brings in the outdoors and is terrific for lounging, reading or watching TV. The large first floor master has doors that open to the pool area and has a lovely master bath. The second floor has generously proportioned bedrooms and baths that will impress friends and family. When entering the backyard you will see the sun drenched pool surrounded by spaces to enjoy hot summer days. There is a pergola-covered patio for outdoor dining all overlooking the impressive landscaping. Allowance for 3,745 SF GFA Maximum and 749 SF accessory structure



# ON THE MARKET



IN# 112453    Folio# 82135

## 10 Jericho Ln, East Hampton

## $5,650,000

For Sale

4 BD     4 BA     2.5K FT²     1.2 ACR

### DETAILS

Single-Family    2 stories    Built in 1900    Water view: none / mainland    Style: carriage house    Water source: town

### AMENITIES

Pool, Gunite, In Ground · Heat, OHW · Fireplace · Garage · Basement, Full · South of Highway · Bathroom on First Floor · Breakfast Area · Hardwood Floors · Pool/Guest House · Sprinkler System · Security System · TV/Cable/Satellite · Beach Rights

### DESCRIPTION

### Georgica Beach At Your Door Steps

Location, Location, Location! Unlimited possibilities await you on this perfect square, 1.2 acre beautiful property in East Hampton Village, only a short walk to Georgica Beach. Stylishly appointed home including double height ceiling in the family room, and second floor dedicated master bedroom suite with adjacent office. Big deck for outdoor dining and entertaining with a bamboo canopied walkway to the free form Gunite Pool, fire pit area and pool house with full second floor studio and bathroom.



# SOLD HOMES



IN# 21509  Folio# 33354

## 86 Georgica Rd, East Hampton

**$4,500,000**  Sold Date: 2019-05-02

Sold

5 BD   4+ BA   4.5K FT²   1.15 ACR

### DETAILS

Single-Family   2 stories   Built in 1907   Water view: none / mainland   Style: traditional

### AMENITIES

Pool: Gunite, In Ground · Heat: GHW · 3 Fireplaces · 2 Garages · Basement · Central AC · South of Highway · Hardwood Floors · Pool/Guest House · Outdoor Shower(s) · Sprinkler System · Bathroom on First Floor · Family Room/Den · Study · Office · Breakfast Area · Laundry Room

### DESCRIPTION

**Best Value Address East Hampton Estate Section**

An exemplar of the grace and refinement to be found in East Hampton's Georgica estate section, this exquisite and beautifully appointed home is half a mile to famous Main Beach. Set on over an acre of lush, private grounds with gardens artfully designed by renowned landscape architect James Van Sweden, this stately home has been renovated with all amenities, yet retains its classic elegance with such details as diamond pane windows, ornate railings and plaster walls. The main house has five bedrooms, four full and two half baths. There is an additional two bedroom, one bath carriage house above the detached two-car garage. The living room with fireplace flows to a formal dining area, and both have French doors to the expansive deck that overlooks the lush grounds. An intimate den with fireplace tucked off the living room is perfect for lazy Sunday reads. The eat-in chef's kitchen is equipped with top-grade appliances including a Garland range, provides ample counter space that facilitates entertaining, and includes a bright breakfast area and island with seating. The master suite features a sitting area, floor to ceiling windows overlooking the glorious landscape and a luxurious bath with a frameless glass-enclosed, marble tiled shower and spa tub with marble surround. Additional bedrooms and baths are all bright, inviting and well appointed. Outdoors enjoy the perfectly round, heated gunite pool, surrounded by stone patios. Relax in the shade of the vine-covered arbor off the pool house, where you will find a changing room, bath, bar, ice maker and an outdoor shower. Should you ever wish to leave this piece of paradise, you're just minutes to the restaurants, shops and cultural destinations of East Hampton Village. Keep as is, renovate, expand or build new. Updated CO and survey with building envelopes. Ready to go.



# SOLD HOMES



IN# 55706   Folio# 85832

## 81 Ocean Ave, East Hampton

**$4,800,000**   Sold Date: 2019-07-01

Sold

4 BD    4.5 BA    3.2K FT²    1 ACR

### DETAILS
Single-Family   2 stories   Built in 2009   Style traditional

### AMENITIES
Heat: GHA   2 Fireplaces   2 Garages   Basement   Central AC   Pondfront   South of Highway   Hardwood Floors   Master Bedroom on First Floor   Bathroom on First Floor   Family Room/Den   Study   Breakfast Area   Laundry Room   Beach Rights

### DESCRIPTION
#### Amazing East Hampton South Home

This traditional two-story house in East Hampton South is located on Hook Pond and is next to Main Beach, with direct access to Hook Pond for kayak and paddle board enthusiasts. Completed in 2009, the first floor features a living room with fireplace, dining room with fireplace, den, master bedroom and bath, large country kitchen, powder room, laundry room and wide plank floors. The second floor includes three en-suite bedrooms and a second story sundeck. Delightful waterside brick patio with built-in barbecue station. This 1.0 acre property has 107' water frontage, enjoys serene southeast views of Hook Pond, the dunes and the Maidstone golf course.



# SOLD HOMES



IN# 32249   Folio# 9926

## 59 Georgica Rd, East Hampton

**$4,000,000**   Sold Date: 2018-12-05

Sold

3 BD   3.5 BA   4.28K FT²   1 ACR

### DETAILS
Single-Family   2 stories   Built in 2006   Water view: none / mainland   Style: european villa

### TAXES & FEES
$25704 (yearly taxes)

### AMENITIES
- Heat OHA  - 1 Fireplace  - Basement  - Central AC  - South of Highway  - Master Bedroom on First Floor  - Bathroom on First Floor  - Breakfast Area  - Finished Basement

### DESCRIPTION
**Georgica Estate Artist Refuge**

Originally designed by acclaimed architect Alexander Gorlin, built by master builder Ben Krupinski and featured in Architectural Digest, no expenses were spared. The property is set around a central court yard with a bucolic flower garden and ocean breezes, it has an old-world charm with a cool modern aesthetic. The L-shaped structure offers a large artist studio, open air living room, kitchen, three bedrooms with three full baths and one half-bath. There are two separate elevators spanning both the first the second floors, designed for easy transport. This residence culminates with a tower and roof deck overlooking panoramic views of the manicured grounds. Perfectly located, just minutes to Main Beach and East Hampton Village.



# SOLD HOMES



IN# 24809   Folio# 43036

## 11 Jericho Close Rd, East Hampton

$2,600,000   Sold Date: 2014-06-12

Sold

3 BD   2.5 BA   2.8K FT²   1 ACR

### DETAILS

Single-Family   2 stories   Built in 1972   Water view: none / mainland   Style: traditional

### AMENITIES

Pool, Gunite, In Ground   Heat, OHA   2 Fireplaces   2 Garages   Basement   Central AC   South of Highway

Master Bedroom on First Floor   Bathroom on First Floor   Library   Breakfast Area

### DESCRIPTION

#### East Hampton Village South

Great opportunity to own a spacious 3-bedroom 2.5-bath home on one full landscaped acre +/- in the heart of Georgica. Set back on a quiet cul-de-sac, this sequestered, contemporary home offers an open floor plan that includes a modern eat-in-kitchen, dining area, large living room with beamed cathedral ceilings, and a multi-sided fireplace that separates the library. Elegant custom sliding doors open up to a large brick patio, perfect for Summer entertaining and being outdoors. Unparalleled private grounds include a heated pool and a separate 2-car garage. Enjoy this light filled contemporary as is, or make plans to add up to 5300+ total square feet and over 1000 square feet of an accessory building. Enjoy all the advantages of the Village, and just minutes to Georgica beach!





Over 20 years of success in Real Estate in the Hamptons has been the result of our winning strategy.

Our team anticipates and reacts to change in an ever evolving industry. We constantly create and implement innovative ways to provide our global clients with the experience and results they deserve.

We provide unparalleled service. Our team is made up of four real estate professionals with backgrounds in real estate, finance, marketing, technology, art and architectural history and management.

Our team's dedication to client relationships with uncompromising loyalty, ethics and trust has made us the industry leaders.

Having sold over a half a billion dollars of Real Estate, we continue to be rated the top producing team in the Hamptons.

## #2 TEAM IN THE HAMPTONS
## 2010-2019

**THE ATLANTIC TEAM**
**20 MAIN STREET, EAST HAMPTON, NY 11937**
**HARA KANG: 631.267.7335 | JAMES KEOGH: 631.267.7341 | JUSTIN AGNELLO: 631.267.7334**

THEATLANTICTEAM.ELLIMAN.COM

© 2018 DOUGLAS ELLIMAN REAL ESTATE. ⌂ EQUAL HOUSING OPPORTUNITY.

A-125-Residential contract of sale. 11-2000

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing

## Residential Contract of Sale

**Contract of Sale**   made as of   January 13   , 2020   BETWEEN

Robert E. Tardif as Bankruptcy Trustee for Bruce E. Bozz, Sr.   and   and Mary Ann Bozzi, Individually

Address:                                                                              ,         ,

Social Security Number/ Fed. I.D. No(s):        -        -            hereinafter called "Seller" and

37 Cottage Avenue Trust, by Blaine Lourd, Trustee

Address: c/o Lourd Murray, 9777 Wilshire Blvd., #1018, Beverly Hills       , CA   ,90212

Social Security Number/ Fed. I.D. No(s):        -        -            hereinafter called "Purchaser".

## The parties hereby agree as follows

1. **Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:
Street Address:
37 Cottage Avenue, East Hampton, New York (Suffolk County)
Tax Map Designation: District: 0301    Section: 01300
                     Block: 0500       Lot: 009.1/011000
Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below *(strike out inapplicable items)*.

Excluded from this sale are furniture and household furnishings and

3. **Purchase Price.** The purchase price is payable as follows:                    $   5,000,000.00

   (a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt or which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract
   (the "Downpayment"):                    $   0.00

   (b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:   $

   (c) by a purchase money note and mortgage from Purchaser to Seller:   $

balance at Closing in accordance with paragraph 7:
                                          $   5,000,000.00

~~4. Existing Mortgage. (Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
~~(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of~~ ~~percent per annum, in monthly installments of $~~ ~~which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on~~
~~(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.~~

1

~~(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.~~

~~(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.~~

~~(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

5. Purchase Money Mortgage. (*Delete if inapplicable*) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:

   (a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $
   for its preparation.

   (b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than           percent per annum and the total debt service thereunder shall not be greater than $
   per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

6. Downpayment in Escrow. (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at address

                                        Not applicable

until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, its hall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit oft he parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Esrowee upon request. AtC losing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within

such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against of all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of anymatter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7. Acceptable Funds. All money payable under this contract, unless otherwise specified, shall be paid by:

   (a) Cash, but not over $ 1,000.00;

   (b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

   (c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount
   of $                                         ; and

   (d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. Mortgage Commitment Contingency. (*Delete paragraph if inapplicable.* For explanation, see Notes on Mortgage Commitment Contingency Clause.) (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before        days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $
for a term of at least          years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home,

2

payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) (*Delete this subparagraph if inapplicable*) Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

9. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:
  (a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;
  (b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;
  (c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;
  (d) Real estate taxes that are a lien, but are not yet due and payable; and
  (e) The other matters, if any, including a survey exception, set forth in a Rider attached.

10. **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b)(*Delete if Inapplicable*) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

11. **Seller's Representations.** (a) Seller represents and warrants to Purchaser that:
  (i)The Premises abut or have a right of access to a public road;
  (ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;
  (iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");
  (iv) The Premises are not affected by any exemptions or abatements of taxes; and
  (v) Seller has been known by no other name for the past ten years, except

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.
  (c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

12. **Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of

3

repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

13. **Insurable Title.** Seller shall give and Purchaser shall accept such title as: reputable Title Company

shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

14. **Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a
Bargain & Sale Deed with Covenants
deed in proper statutory short form for recording, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.
   (b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

15. **Closing Date and Place.** Closing shall take place at the office of:

at  **  o'clock  on or about
or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of
**Closing date on about 15 business days from date of Court Order approving sale.

16. **Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:
   (a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.
   (b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a single    family dwelling at the date of Closing.
   (c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or awit hholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.
   (d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.
   (e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.
   (f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.
   (g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

17. **Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

18. **Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:
   (i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.
   (b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.
   (c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.
   (d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.
   (e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. **Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. **Use or Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear or such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

4

21. **The Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect or the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

22. **Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

23. **Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes afa ir and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

24. **Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

25. **Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

26. **No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

27. **Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than:
NONE

("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

28. **Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience or reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This Subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall

not be for the benefit of, and shall not create, any rights in, for or enforceable by, any other person or entity.

(t) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

Continued below *in paragraphs 29-34*.

In witness whereof, this contract has been duly executed by the parties hereto.

_____ Trustee                              _____
Robert E. Tardif as Bankruptcy Trustee for Bruce E.        37 Cottage Avenue Trust, by Elaine Lourd, Trustee
Bozzi, Sr.                              *Seller*                                                                    *Purchaser*

_____                          _____
and Mary Ann Bozzi, Individually     *Seller*                                                                    *Purchaser*

Attorney for Seller:                                        Attorney for Purchaser
                                                            Noel Blair
Address:                                                    Address: Blair & Associates, 1501 Broadway, Suite 1801
                                                                     New York, NY 10036
Tel.:                          Fax:                         Tel.:  212-354-0020x22      Fax:   212-354-1343

Receipt of the downpayment is acknowledged and the undersigned
agrees to act in accordance with the provisions of paragraph 6 above.
                                                                                                                *Escrowee*

29.   CLOSING DATE ADJOURNMENT: Either party shall have the right to adjourn the Closing Date for up to thirty (30) calendar days from the Closing Date stated in the Contract. The parties may always mutually agree to an earlier Closing Date.

30.   As a condition of Closing, all liens and judgments that follow the land, or which may be an impediment to transfer of ownership will be extinguished by Seller and or by order of the Bankruptcy Court.

31.   COUNTERPARTS: This Contract may be executed in any number of counterparts, each of which shall be deemed an original but all of, which together shall constitute one and the same instrument. Facsimile or PDF signatures by either party on the Contract or a separate counterpart shall be deemed to have the full force and effect as an original signature and shall be binding upon the parties.

32.   MODIFICATIONS TO CONTRACT: The parties agree that the Attorneys for the parties may, in writing, notice, change, adjourn or extend the time limitations stated in the Contract or Riders including but not limited to the Closing Date, and same will be binding on the parties and given the same full force and effect as if given or signed by the parties themselves.

33.   DRAFTSMAN: In the event of a dispute regarding this Agreement or any Riders thereto, neither party shall be deemed the draftsman of this Agreement for purposes of contract construction, and the language found therein shall not be construed adversely against either party by virtue of having drafted same. All terms and conditions of this Contract of Sale have been negotiated at arm's length and with the assistance of each party's counsel of choice.

34.   PROPERTY CONDITION DISCLOSURE ACT CREDIT: The parties acknowledge the existence of the Property Condition Disclosure Act, effective March 1, 2002, set forth under Article 14 of the Real Property Law. If the Property Condition Disclosure Act is applicable to this transaction and the Property Condition Disclosure Statement is not attached to this Contract then, and in that event the Purchasers shall receive at the closing of title, from the Sellers the sum of $500.00 as a reduction of the purchase price. This $500.00 represents the required amount due to the Purchaser under Section 465 of the Property Condition Disclosure Act.

```
STATE OF NEW-YORK                                    Town of East Hampton                                   TAXABLE STATUS DATE 03/01/2019
COUNTY OF SUFFOLK                              Assessment Roll And Levy Module                                                 Page 232
2019                                                                                                                       Uniform % .56
SWIS CODE 472401
ROLL SECTION 1

NAME AND ADDR. OF LAST        SUFFOLK COUNTY TAX MAP, ADDRESS    ASSESS LAND/TOTAL     EXEMPTIONS    EXEMPTIONS    NET              NET TAXABLE VALUE
REPUTED                       AND ACCOUNT IDENTIF.               MARKET VALUE                                     TAXABL

                                                                                                                                         39,900
BRUCE BOZZI                   472401 013.000-0005-011.000 0000         1,800.00                                   7 rg50    39,900   9 MC30
MARY ANN BOZZI                ITEM NO                0.00             19,750.00                                                          19,750
737 PARK AVE                  37 COTTAGE AVE                     3,526,785.71                                                            19,750
NEW YORK NY  10021                                               SCH#       472401                                          19,750   3 hg11
                              TAX CODE                           CLASS         210                                          19,750   1 hc20
                                                                 ACRES       0.980                                                       19,750
                                                                                                                            19,750   9 mc20
                                                                                                                                         19,750
                                                                                                                  7 rg50    19,750   7 ww40
                                                                                                                                     9 MC30

PATCHWORK EAST LLC            472401 013.000-0005-012.000 0000         2,300.00                                                          35,100
1888 CENTRAL PARK E SUITE 90  ITEM NO                0.00             35,100.00                                                          35,100
LOS ANGELES CA 90067          31 COTTAGE AVE                     6,267,857.14                                               35,100   3 hg11
                                                                 SCH#       472401                                          35,100   1 hc20
                              TAX CODE                           CLASS         210                                                       35,100
                                                                 ACRES       1.140                                          35,100   9 mc20
                                                                                                                                         35,100
                                                                                                                  7 rg50    35,100   7 ww40
                                                                                                                                     9 MC30

EVIDOG MICK LLC               472401 013.000-0005-013.000 0000         2,700.00                                                          28,400
C/O CITRIN COOPERMAN          ITEM NO                0.00             28,400.00                                                          28,400
529 FIFTH AVE                 54 LEE AVE                         5,071,428.57                                               28,400   3 hg11
NEW YORK NY  10017                                               SCH#       472401                                          28,400   1 hc20
                              TAX CODE                           CLASS         210                                                       28,400
                                                                 ACRES       1.110                                          28,400   9 mc20
                                                                                                                                         28,400
                                                                                                                  7 rg50    28,400   7 ww40
                                                                                                                                     9 MC30

ERIC C RUDIN                  472401 013.000-0006-001.004 0000         4,000.00                                                          57,000
544 E.86TH ST  PH E           ITEM NO                0.00             57,000.00                                                          57,000
NEW YORK, NY  10028           96 GEORGICA RD                    10,178,571.43                                               57,000   3 hg11
                                                                 SCH#       472401                                          57,000   1 hc20
                              TAX CODE                           CLASS         210                                                       57,000
                                                                 ACRES       2.330                                          57,000   9 mc20
                                                                                                                                         57,000
                                                                                                                  7 rg50    57,000   7 ww40
                                                                                                                                     9 MC30

CRESCENT 786 LLC              472401 013.000-0006-002.000 0000         2,000.00                                                           2,750
C/O MUNIB ISLAM               ITEM NO                0.00              2,750.00                                                           2,750
125 E 72ND ST                 90 GEORGICA RD                       491,071.43                                                2,750   3 hg11
NEW YORK NY  10021                                               SCH#       472401                                           2,750   1 hc20
                              TAX CODE                           CLASS         312                                                        2,750
                                                                 ACRES       1.200                                           2,750   9 mc20
                                                                                                                                          2,750
                                                                                                                  7 rg50     2,750   7 ww40
                                                                                                                                     9 MC30

GOLDSMITH, BARBARA TRUST U/A  472401 013.000-0006-003.000 0000         2,000.00                                                          20,725
MICHAEL A. SAIGER, TRUSTEE C  ITEM NO                0.00             20,725.00                                                          20,725
EMPIRE STATE BUILDING         86 GEORGICA RD                     3,700,892.86                                               20,725   3 hg11
350 FIFTH AVE  FL 68                                             SCH#       472401                                          20,725   1 hc20
NEW YORK NY  10118            TAX CODE                           CLASS         210                                                       20,725
                                                                 ACRES       1.000                                          20,725   9 mc20
                                                                                                                                         20,725
                                                                                                                  7 rg50    20,725   7 ww40
                                                                                                                                     9 MC30

ELI ZABAR                     472401 013.000-0006-004.001 0000         3,200.00                                                          24,600
ATTN: JANNETA                 ITEM NO                0.00             24,600.00                                                          24,600
DEVON FREDERICKS              82 GEORGICA RD                     4,392,857.14                                               24,600   3 hg11
1064 MADISON AVE                                                 SCH#       472401                                          24,600   1 hc20
NEW YORK NY  10028            TAX CODE                           CLASS         210                                                       24,600
                                                                                                                            24,600   9 mc20
                                                                                                                                         24,600
                                                                                                                  7 rg50    24,600   7 ww40
                                                                                                                                     9 MC30

TSF FINANCIAL INVESTMENTS, L  472401 013.000-0006-004.002 0000         1,800.00                                                          14,950
C/O TINA S. FREDERICKS        ITEM NO                0.00             14,950.00                                                          14,950
76 GEORGICA RD                76 GEORGICA RD                     2,669,642.86                                               14,950   3 hg11
EAST HAMPTON, NY  11937                                          SCH#       472401                                          14,950   1 hc20
                              TAX CODE                           CLASS         483                                                       14,950
                                                                                                                            14,950   9 mc20
                                                                                                                                         14,950
                                                                                                                                     7 ww40

v6.5.001                      6/28/2019 5:30:19 PM                                                \\EH-Bladel\Govern\version108\CustomReports\ehn_assfinal.rpt
```